CARLIE CHRISTENSEN, United States Attorney (#633)
MICHAEL KENNEDY, Assistant United States Attorney (#8759)
JOHN W. HUBER, Assistant United States Attorney (#7226)
Attorneys for the United States of America
185 South State Street, Suite 300 • Salt Lake City, Utah  84111
Telephone:  (801) 524-5682 • Facsimile:  (801) 325-3387
e-mail: michael.kennedy@usdoj.gov  •  john.huber@usdoj.gov

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 2:09 CR 842 TS |
| Plaintiff, | : | |
| vs. | : | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO |
| JOSEPH PETER MOESSER, | : | DISMISS THE SUPERSEDING INDICTMENT |
| Defendant. | | |
| | | Judge Ted Stewart |

---

The United States of America, by and through the undersigned Assistant

United States Attorney, hereby respectfully submits its Memorandum in

Opposition to Defendant's Motion to Dismiss the Superseding Indictment (Doc.

43).  For the reasons set forth herein, the government requests that defendant's

motion be denied.

I. <u>Procedural History</u>

1.  On November 4, 2009, the Grand Jury returned an Indictment against the defendant in four counts (Doc. 1).  The defendant was charged with one count each of violations of 49 U.S.C. § 46505(b)(3) (attempted placement of explosive on aircraft); 18 U.S.C. § 844(g)(1) (possession of explosive at airport); 49 U.S.C. § 46312 (unlawful transportation of hazardous material in air commerce); and  18 U.S.C. § 1001 (false statement), each relating to smokeless powder he was attempting to transport by air to Johannesburg, South Africa in his checked baggage on Delta Airlines.

2.  On May 12, 2010, the defendant filed a Motion to Dismiss the Indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, and an accompanying Memorandum in Support (Docs. 30 and 31).  The defendant's Motion to Dismiss alleged seven grounds: (1) his smokeless powder was exempted from the reach of 18 U.S.C. § 844(g); (2) the definition of ammunition that exempts the powder from 18 U.S.C. § 844(g) also exempts it from 49 U.S.C. § 46312; (3) the statutes charged are too vague to provide adequate notice; (4) the statutes allow arbitrary government enforcement; (5) a conviction would be an

impermissible novel judicial interpretation; (6) the rule of lenity prohibits conviction on the basis of an unclear statute; and (7) (relating to the false statements charge only) his statements to federal authorities were literally true.

3.  On June 30, 2010, the Grand Jury returned a Superseding Indictment against the defendant in five counts (Doc. 36).  The defendant was charged with two counts each of violations of 49 U.S.C. § 46312 (unlawful transportation of hazardous material in air commerce) and 49 U.S.C. § 5124 (criminal violation of transportation of hazardous materials regulations).  One of each of the counts under 49 U.S.C. § 46312 and 49 U.S.C. § 5124, respectively, related to Hodgdon Triple Seven smokeless powder pellets he was attempting to transport by air to Johannesburg, South Africa, in his checked baggage on Delta Airlines (Counts 1 and 3); the other two counts under those statutes (Counts 2 and 4) related to CCI 209M Shotshell primers he was likewise attempting to transport.  Count 5 alleged a violation of 18 U.S.C. § 1001 (false statement).

4.  On August 10, 2010, the defendant filed a Motion to Dismiss the Superseding Indictment and a supporting Memorandum (Docs. 42 and 43) in which he realleges essentially the same grounds as he alleged in the original Motion to Dismiss.

## II. Statement of Facts

All facts relevant to the determination of the defendant's Motion to Dismiss are included in the Superseding Indictment, which is incorporated herein by reference. The United States objects to the consideration of, or the resort to, any facts, factual assumptions, or factual inferences not contained in the four corners of the Superseding Indictment in the determination of the defendant's motion.

The following facts are set forth in the introduction portion of the Superseding Indictment, and are set out below for the convenience of the Court:

1. On or about October 1, 2009, the defendant was a ticketed passenger on Delta Airlines Flight Number 1512, service from Salt Lake City, Utah to Atlanta, Georgia, and Delta Airlines Flight Number 0200, service from Atlanta, Georgia, to Johannesburg, South Africa.

2. When the defendant arrived at Salt Lake City International Airport to check in for his flight, he was approached by agents of the Federal Aviation Administration (FAA), Transportation Security Administration (TSA), and Federal Bureau of Investigation (FBI). The defendant was asked if he had any ammunition in his checked or carry-on luggage, and the defendant consented to an inspection of his luggage. The defendant opened a duffel bag and produced a

-4-

locked metal box.  The defendant opened the box and produced one unopened, commercially packaged container of "Hodgdon Triple Seven Pellets," one previously opened and partially emptied commercially-packaged container of "CCI 209M Shotshell Primers," and two boxes of 25-count Winchester XX 12 gauge shotgun shells.  Agents inspected the items.

3.  The agents advised the defendant that the "Hodgdon Triple Seven Pellets" were forbidden on passenger aircraft, and that the "CCI 209M Shotshell Primers" were a regulated hazardous material that had not been properly prepared for transportation.  The defendant voluntarily surrendered the items to the agents.

4.  A cursory inspection of the two boxes of shotgun shells disclosed that the top row of shells in each box were new, unexpended rounds.  Under D.O.T. regulations, new, unexpended shotgun shells are lawful for transportation in checked baggage.

5.  The defendant then was asked by the agents if he had any other prohibited items or "black powder" to declare or disclose, and the defendant stated that he did not.   The defendant then secured the metal box, containing the shotgun shell boxes, and returned it to the duffel bag.  Upon completion of the inspection, the defendant proceeded to the Delta passenger check-in counter where he offered

the duffel bag to Delta Airlines as checked baggage.

6.   Following the passenger check-in process, the defendant's checked baggage was tagged and then routinely screened by the TSA's automated baggage screening system. During this process, the metal box in the defendant's duffle bag created an alarm that prompted TSA officers to manually inspect the container and its contents. The TSA Officer conducting the inspection of the shotgun shells discovered that the top row of shells in each box appeared to be commercially produced, new, unexpended shells with their primers intact.  The remaining shells all appeared to have expended primers and appeared to have been refilled.  Of the forty expended shotgun shells, thirty-eight contained Hodgdon Triple Seven Pellets, and two contained CCI 209M Shotshell Primers.

III.  <u>Relevant Statutes and Regulations</u>

The following statutes and regulations are relevant to the Superseding Indictment and the defendant's Motion to Dismiss:

1.   Section 5103(a) of Chapter 51 of Title 49, United States Code requires the Secretary of the United States Department of Transportation (hereafter, "Transportation Secretary") to designate explosive or flammable materials as hazardous, on a determination that transportation of the material in commerce in a

particular amount or form may pose an unreasonable risk to health and safety or property.

2.  Section 5103(b) of Chapter 51 of Title 49, United States Code requires the Transportation Secretary to prescribe regulations for the safe transportation, including security, of hazardous material in intrastate, interstate, and foreign commerce.  Under 49 U.S.C. § 5103(b)(1)(A), the regulations apply to any person who transports hazardous material in commerce, causes hazardous material to be transported in commerce, or misrepresents whether the person is transporting or causing to be transported hazardous materials in commerce.

3.  The Transportation Secretary has issued regulations in compliance with 49 U.S.C. § 5103(a) and (b).  The applicable regulations are published at 49 C.F.R. Parts 171 through 180.

4.  49 C.F.R. § 172.101 sets forth in table-form  the materials regulated by the Hazardous Material Regulations (HMR Table).  Column 2 of the HMR Table lists specific hazardous materials by description and proper shipping name, the transportation of which are restricted or regulated under the HMR.  Column 3 of the HMR Table provides the Hazard class or Division for each hazardous material listed.

5.  HMR Table Column 9A indicates whether the hazardous material listed in Column 2 may be shipped by passenger aircraft or by passenger rail car.  The term "forbidden" in Column 9A of the HMR Table means that the material may not be offered for transportation or transported by passenger aircraft or passenger rail car; if a quantity appears in Column 9A, the material may not be offered for transportation or transported by such mode of transportation in greater quantities than indicated.  Both restrictions are set forth in 49 C.F.R. § 172.101(j)(1), and reinforced specifically to passenger-carrying aircraft by 49 C.F.R. § 173.27(b)(1).

6.  Hogdgon Triple Seven pellets are designated as a "Propellant, Solid", a hazardous material, under Department of Transportation regulations.  "Propellant, solid" is described in 49 C.F.R. § 173.59  as "substances consisting of a deflagrating solid explosive, used for propulsion."  Hogdgon Triple Seven pellets are classified as a Division 1.3C explosive having a fire hazard and a minor blast hazard or a minor projection hazard or both, under 49 C.F.R. § 173.50.  Under 49 C.F.R. § 173.27(b) and 49 C.F.R. § 172.101 (HMR Table Column 9A), all solid propellants classified under Division 1.3C are forbidden for carriage on passenger aircraft.

7.  Under 49 C.F.R. § 173.171, smokeless powder for small arms which has

been classified as a Division 1.3C explosive may be reclassified in Division 4.1 for carriage on cargo-only aircraft in North America in quantities of 100 pounds or less, and only if properly packaged and marked.  Hogdgon Triple Seven pellets are classified as solid propellants in Division 1.3C and may be sub-classified as smokeless powder for small arms in Division 4.1.  Under 49 C.F.R. § 173.27(b) and 49 C.F.R. § 172.101 (HMR Table Column 9A), all smokeless powder for small arms classified under Division 4.1 are forbidden for carriage on passenger aircraft.

8.  Under 49 C.F.R. § 173.59, "Primers, Cap Type" are described as "articles consisting of a metal or plastic cap containing a small amount of primary explosive mixture that is readily ignited by impact."  CCI 209M Shotshell Primers are designated as "Primers, Cap Type", a hazardous material, under Department of Transportation regulations.  They are classified as a Division 1.4S explosive having a minor explosion hazard, with explosive effects largely confined to the package, under 49 C.F.R. § 173.50.  Under 49 C.F.R. § 173.27(b) and 49 C.F.R. § 172.101 (HMR Table Column 9A), all Primers, Cap Type classified under Division 1.4S are permitted for carriage on passenger aircraft as hazardous material cargo in quantities of 25 kilograms or less, if properly packaged,

described, certified, marked, and labeled.  They may not be transported in a passenger's personal checked or carry-on baggage.

9.  The packaging requirements for passenger aircraft carriage of Division 1.4S explosives are prescribed in 49 C.F.R. § 173.62, and include specific requirements for inner, intermediate, and outer packaging.  The requirements for describing and certifying hazardous materials for transportation are prescribed in 49 C.F.R. §§ 172.200 through 172.205.  The requirements for marking hazardous materials for transportation are prescribed in 49 C.F.R. §§ 172.300 through 172.338.  The requirements for labeling hazardous materials for transportation are prescribed in 49 C.F.R. §§ 172.400 through 172.450.

10.  Under 49 C.F.R. § 175.3, hazardous materials that are not prepared for shipment in accordance with Department of Transportation regulations may not be offered for transportation or transported aboard an aircraft.

11.  Under 49 C.F.R. § 175.1(b)(2), regulations relating to the transportation of hazardous materials aboard aircraft apply to "air passengers that carry any hazardous material on their person or in their carry-on or checked baggage."

12.  Column 2 of the HMR Table contains a listing for "Ammunition SA (small arms), see  Cartridges for weapons, etc."; with the remaining columns

blank, thus cross-referencing small arms ammunition to "Cartridges for weapons, etc."

13.  The HMR Table includes an entry under the shipping name for "Cartridge, small arms".

14.  "Cartridges, small arms" is described in 49 C.F.R. § 173.59  as "ammunition consisting of a cartridge case fitted with a center or rim fire primer and containing both a propelling charge and solid projectile(s).  They are designed to be fired in weapons of caliber not larger than 19.1 mm.  Shotgun cartridges of any caliber are included in this description. . . .."

15.  "Projectiles" is described in 49 C.F.R. § 173.59  as "articles, such as a shell or bullet, which are projected from a canon or other military gun, rifle, or other small arm. . . .."

16.  "Ammunition" is described in 49 C.F.R. § 173.59  as "generic term related mainly to articles of military application consisting of all types of bombs, grenades, rockets, mines, projectiles, and other similar devices and contrivances."

17.  "Powder, smokeless" is defined in 49 C.F.R. § 173.59  as "Substance based on nitrocellulose used as a propellant.  The term includes propellants with a single base (nitrocellulose NC) alone), those with a double base (such as NC and

nitroglycerin (NG)) and those with a triple base (such as NC/NG/nitroguanidine). . . .."

18.  49 C.F.R. § 173.59 further provides in its introductory material that description of terms the description is "for information only," and "they must not be used for purposes of classification or to replace proper shipping names prescribed in [49 C.F.R. §] 172.101."

19.  49 C.F.R. § 175.10(a)(8) provides as follows:

§ 175.10 Exceptions for passengers, crewmembers, and air operators.

(a) This subchapter does not apply to the following hazardous materials when carried by aircraft passengers or crewmembers provided the requirements of §§ 171.15 and 171.16 (see paragraph (c) of this section) [relating to requirements for incident reporting] and the requirements of this section are met:

   . . .

   (8) Small arms ammunition for personal use carried by a crewmember or passenger in checked baggage only, if securely packed in boxes or other packagings specifically designed to carry small amounts of ammunition. Ammunition clips and magazines must also be securely boxed. This paragraph does not apply to persons traveling under the provisions of 49 CFR 1544.219 [relating to persons traveling as law enforcement officers].

20.  18 U.S.C. § 844 provides as follows in relevant part:

(g)(1) Except as provided in paragraph (2), whoever possesses an explosive in an airport that is subject to the regulatory authority of the Federal Aviation Administration, or in any building in whole or in part owned, possessed, or used by, or leased to, the United States or any department or agency thereof, except with the written consent of the agency, department, or other person responsible for the management of such building or airport, shall be imprisoned for not more than five years, or fined under this title, or both.

> (2) The provisions of this subsection shall not be applicable to--

>> (A) the possession of ammunition (as that term is defined in regulations issued pursuant to this chapter) in an airport that is subject to the regulatory authority of the Federal Aviation Administration if such ammunition is either in checked baggage or in a closed container; or

>> (B) the possession of an explosive in an airport if the packaging and transportation of such explosive is exempt from, or subject to and in accordance with, regulations of the Pipeline and Hazardous Materials Safety Administration for the handling of hazardous materials pursuant to chapter 51 of title 49.

> . . ..

(j) For the purposes of subsections (d), (e), (f), (g), (h), and (i) of this section and section 842(p), the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232

of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

21.  18 U.S.C. § 845 provides in relevant part as follows:

§ 845. Exceptions; relief from disabilities

(a) Except in the case of subsections (*l*), (m), (n), or (o) of section 842 and subsections (d), (e), (f), (g), (h), and (*i*) of section 844 of this title, this chapter shall not apply to:

> (1) aspects of the transportation of explosive materials via railroad, water, highway, or air that pertain to safety, including security, and are regulated by the Department of Transportation or the Department of Homeland Security; . . ..

22.  27 C.F.R. § 555.11 in relevant part provides as follows:

§ 555.11 Meaning of terms.
When used in this part, terms are defined as follows in this section. Words in the plural form include the singular, and vice versa, and words indicating the masculine gender include the feminine. The terms "includes" and "including" do not exclude other things not named which are in the same general class or are otherwise within the scope of the term defined.

. . ..

Ammunition. Small arms ammunition or cartridge cases, primers, bullets, or smokeless propellants designed for use in small arms, including percussion caps, and 3/32 inch and other external burning

pyrotechnic hobby fuses. The term does not include black powder.

## IV.  Summary of the Argument

The defendant's motion to dismiss should be denied with respect to each count in the Superseding indictment.  The Department of Transportation regulations which give rise to the criminal charges in Counts 1-4 (and the false statement alleged in Count 5) include a definition of small arms ammunition which excludes the explosives concealed in the defendant's luggage.  Importing a different definition from another statutory and regulatory scheme would ignore the more apt definition, would ignore the Department of Transportation's classification of the materials as explosives, and would ignore the clear congressional intent that the transportation of explosives in air commerce be regulated and controlled by the Department of Transportation

The defendant's motion to dismiss Counts 1-4 on the basis that the statutes and regulations at issue in this motion are unconstitutionally vague also should be denied.  The defendant cannot establish a facially vague challenge, inasmuch as this case involves neither restrictions on activity protected by the First Amendment, nor a pre-enforcement challenge alleging the statutes and regulations are invalid in all their applications.  If construed as an as-applied challenge, such

challenges are not subject to pre-trial determination.  On the merits, the statutes and regulations are not unconstitutional as applied, because the defendant's conduct is precisely the type of conduct to which the statutes and regulations apply.

The defendant's motion to dismiss Counts 1-4 on the basis of a novel, retroactive interpretation of a statute or regulation should be denied because no novel interpretation is advanced by or included in the Superseding Indictment. The defendant's motion to dismiss Counts 1-4 on the basis of the rule of lenity likewise should be denied because the rule of lenity only applies in cases of ambiguous statutes and regulations.  Here, no such ambiguity exists, and therefore the rule of lenity is inapplicable.

The defendant's motion to dismiss should be denied for the additional reason that it calls for the Court to determine disputed facts bearing on guilt or innocence outside the four corners of the indictment.   The government does not accede to such consideration.

Finally, the defendant's motion to dismiss Count 5 on the basis of the literal truth of his answers should be denied because it requires consideration and resolution of disputed facts outside of the indictment, requires a determination of

the general issue in the case, and the "literal truth" of answers to direct, unambiguous questions is question of fact for the jury.

## V. Argument

A. *Defendant's Motion to Dismiss should be denied because the "small arms ammunition" exemption is inapplicable to the defendant's conduct.*

The defendant's Motion to Dismiss should be denied with respect to each count[1] because the definition of "ammunition" in 27 C.F.R. § 555.11 is not applicable to the Hogdgon Triple Seven pellets and CCI 209M shotshell primers in the defendant's checked baggage, and his conduct therefore did not fall under the exemption in 49 C.F.R. 175.10(a)(8) for passengers carrying personal-use amounts of small arms ammunition in checked baggage.

1. *General legal standards applicable to a motion to dismiss.*

A charge in an indictment is sufficient – and not subject to dismissal – if it contains the essential elements of the offense intended to be charged, puts the defendant on notice of the charges against which he must defend, and allows him to assert a double jeopardy defense. *See*, *e.g.*, *United States v. Todd*, 446 F.3d

---

[1] Each count is treated separately for analytical purposes, because each count, in essence, is a separate indictment. *See United States v. Redcorn*, 528 F.3d 727, 734 10th Cir. 2008 (quoting *United States v. Powell*, 469 U.S. 57, 62 (1984)) (internal citations omitted).

1062, 1067 (10th Cir. 2006) (citing *United States v. Dashney*, 117 F.3d 1197, 1205

(10th Cir. 1997)).  Because a challenge to the indictment does not test the

government's case, "[c]ourts should . . . avoid considering evidence outside the

indictment when testing the indictment's legal sufficiency." *Todd* at 1067.  In

considering a motion to dismiss counts of an indictment, the factual allegations of

those counts are taken as true.  *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir.

1994) (citing *United States v. Sampson*, 371 U.S. 75, 78-79 (1962).  A motion

under Fed. R. Crim. P. 12(b)(2) permits a defendant only to test whether the

indictment's allegations are sufficient to state a claim. *United States v. Welch*, 327

F.3d 1081, 1090 (10th Cir. 2003) ("Where a defendant challenges the sufficiency

of an indictment for failure to state an offense, a court generally is bound by the

factual allegations contained within the four corners of the indictment").

   Additionally, a district court may not resolve the general issue of guilt or

innocence in a criminal case through a Rule 12(b)(2) motion.  The Tenth Circuit

recently reviewed the denial of a Fed. R. Crim. P. 12(b)(2) motion to dismiss in

*United States v. Pope*, ___ F.3d ___, 2010 WL 2872482 (10th Cir. July 23, 2010).

In affirming the district court's denial of the motion, the court stated:

> . . . Rule 12 authorizes the district court to resolve before trial only
> those motions "that the court can determine *without a trial of the*
> *general issue*." Fed.R.Crim.P. 12(b)(2) (emphasis added). In a
> criminal case, the "general issue" is "defined as evidence relevant to
> the question of guilt or innocence." *United States v. Yakou*, 428 F.3d
> 241, 246 (D.C.Cir. 2005) (quotation marks omitted). Thus, the
> Supreme Court has instructed, Rule 12 permits pretrial resolution of a
> motion to dismiss the indictment only when "trial of the facts
> surrounding the commission of the alleged offense would be of no
> assistance in determining the validity of the defense." *United States*
> *v. Covington*, 395 U.S. 57, 60, (1969); see also *United States v. Knox*,
> 396 U.S. 77, 83, 83 n. 7 (1969); *United States v. Mandujano*, 425
> U.S. 564, 585 n. 1(Brennan, J., concurring). If contested facts
> surrounding the commission of the offense would be of any assistance
> in determining the validity of the motion, Rule 12 doesn't authorize
> its disposition before trial.

*Id.* at *3.

There exists a limited class of motions to dismiss that, while implicating the

general issue of guilt or innocence, do not require a trial of it, and thus are

amenable to pretrial determination by the court. *Id.* at *4. For example, a motion

that requires an answer only to a pure question of law may be determined pretrial.

*Id.* Similarly,

> a court may always ask "whether the allegations in the indictment, if
> true, are sufficient to establish a violation of the charged offence"
> [sic] and dismiss the indictment if its allegations fail that standard.
> Even if this question can be fairly said to implicate the general issue,

it doesn't require a trial because it focuses solely on the facts alleged
in the indictment and their legal adequacy.

*Id.* (citations omitted).

> 2. *The "small arms ammunition" exemption under 49 C.F.R. §*
> *175.10(a)(8) is inapplicable to the conduct alleged in Counts 1*
> *through 4.*

In this case, the Superseding Indictment, in legally sufficient charging

language, alleges in Counts 1-4 that the defendant violated the law in his attempt

to place checked baggage containing explosive materials on a passenger aircraft in

violation of regulations governing the transportation of hazardous materials.  The

Superseding Indictment also alleges in legally sufficient language in Count 5 that

the defendant also violated the law by making a material false statement to law

enforcement officials regarding the presence of the explosive materials in his

checked baggage.  The allegations, if true (as is to be assumed for the purposes of

determining the motion to dismiss), thus are sufficient to establish violations of

the charged offenses, rendering the Superseding Indictment facially valid.  In other

words, the Superseding Indictment's allegations are sufficient to state a claim.  *See*

*United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).

Indeed, the defendant is not challenging the facial validity of the Superseding Indictment.  Rather, he claims he is challenging the legal sufficiency of each of these counts by alleging that the explosive materials in question qualified as "small arms ammunition" subject to an exemption under the regulations.  The central premise of the defendant's challenge to each count in the Superseding Indictment is that the definition of "ammunition" in 27 C.F.R. § 555.11 is applicable to the Hogdgon Triple Seven pellets and CCI 209M shotshell primers in his checked baggage, and brings them under the exemption in 49 C.F.R. 175.10(a)(8) for passengers carrying personal-use amounts of small arms ammunition in checked baggage.  While the government strongly contests this argument (see discussion *infra*,) this aspect of the defendant's motion relating to an interpretation of the governing statutes is a legal question amenable to pretrial determination.[2]  *Id.*, *see also United States v. La Cock*, 366 F.3d 883, 888 (10th Cir. 2004) (district court determined pretrial if device was a "destructive device" as defined in the relevant statute).

_____

[2] While the Court may need to make factual determinations (such as whether the hazardous materials in the defendant's checked baggage meet any of the definitions of ammunition or small arms ammunition in the various regulations, see discussion *infra*,) in order to decide the legal question, these factual determinations are peculiar to the legal question.  *See Pope* at *4.

The defendant argues that Counts 1 through 4 of the Superseding Indictment should be dismissed, because he claims that the Triple Seven pellets and shotshell primers he had concealed in his checked baggage were exempt from carriage restrictions under the "small arms ammunition" exemption in 49 C.F.R. § 175.10(a)(8). He contends that Department of Transportation (hereinafter, "D.O.T.") regulations include no definition of "small arms ammunition," and therefore the definition of "ammunition" in 27 C.F.R. § 555.11 (promulgated under Chapter 40, Title 18, United States Code (18 U.S.C. § 841 *et seq.*) and defining "ammunition" to include "[s]mall arms ammunition or cartridge cases, primers, bullets, or smokeless propellants designed for use in small arms"), should be imported into and applied to the regulations in 49 C.F.R. governing the transportation of hazardous materials.

The defendant's argument fails for several reasons: First, the D.O.T.'s regulations governing the transportation of hazardous materials includes its own definition of ammunition, as well as its own definition of ammunition for small arms, both of which exclude smokeless powder and primers, rendering the

application of the A.T.F.[3] regulation's definition to the D.O.T.'s regulation both

unnecessary and inappropriate.  The statutes and regulations are not *in pari*

*materia*, and therefore each distinct statutory and regulatory scheme should hold

sway in its own domain.  Applying the A.T.F. definition to the D.O.T. regulations

would fail to recognize and give proper effect to D.O.T.'s classification of the

Triple Seven pellets and shotshell primers as explosives which are either forbidden

(in the case of the Triple Seven pellets) or severely restricted (in the case of the

shotshell primers) for transportation on passenger aircraft.

> a. <u>D.O.T. regulations define small arms ammunition in a
> manner which excludes smokeless powder and primers.</u>

"Ammunition" is defined in 49 C.F.R. § 173.59  as a "generic term related

mainly to articles of military application consisting of all types of bombs,

grenades, rockets, mines, projectiles, and other similar devices and contrivances."

Additionally, and more to the point, the Hazardous Material Regulations ("HMR")

Table at 49 C.F.R. 172.101 cross-references small arms ammunition to "Cartridges

for weapons, etc." by its entry, "Ammunition SA (small arms), see  Cartridges for

---

[3]  Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Department of Justice (prior to January 24, 2003, Bureau of Alcohol, Tobacco, Firearms, U.S. Department of the Treasury).

weapons, etc." The HMR Table also includes an entry under the shipping name

"Cartridge, small arms". In turn, "Cartridges, small arms" is described in 49

C.F.R. § 173.59, the definitional section relating to explosives, as –

> ammunition consisting of a cartridge case fitted with a center or rim
> fire primer and containing both a propelling charge and solid
> projectile(s). They are designed to be fired in weapons of caliber not
> larger than 19.1 mm. Shotgun cartridges of any caliber are included
> in this description. . . ..

Thus, the D.O.T. regulations define small arms ammunition with reference

to small arms cartridges, and further specifically define small arms cartridges in a

manner that excludes smokeless powder pellets and primer caps by themselves.

To be considered a small arms cartridge, and thus small arms ammunition, a

particular item must contain both a propelling charge *and* a solid projectile.

Neither the Triple Seven pellets nor the shotshell primers presented by the

defendant for carriage on the aircraft meet this description; the Triple Seven

pellets are only a propellant, and the primers are only an igniting element. Neither

incorporates a projectile.[4]

---

[4] The fact that the defendant concealed the Triple Seven pellets and the primers in
expended shotgun shells does not save them from this exclusion. While the *unexpended* shotgun
shells beneath which the expended shells containing the contraband were hidden clearly qualified
as small arms cartridges, the expended shells did not, because they contained neither a projectile
nor an unexpended propellant. They were merely a concealment device for the contraband Triple
Seven and primers.

Further, 49 C.F.R. § 173.59 states that its definitions may "not be used for purposes of classification or to replace proper shipping names prescribed in [49 C.F.R. §] 172.101," meaning that regardless of the definition assigned to the terms, the definition may not be used to override the designation classification of the Triple Seven pellets and shotshell primers as explosives.  Nevertheless, 49 C.F.R. § 173.59 also includes definitions for solid propellants and cap-type primers which applied to the defendant's hazardous materials.

Since the D.O.T. regulations define small arms ammunition in a manner that excludes the Triple Seven pellets and shotshell primers, and also include specific definitions of these items particular to these regulations, there is no reason to apply the A.T.F. definition of "ammunition" in 27 C.F.R. 555.11 to the term "small arms ammunition" in 49 C.F.R. 175.10(a)(8).  The exemption for small arms ammunition in 49 C.F.R. 175.10(a)(8) patently did not apply to the defendant or his Triple Seven pellets and shotshell primers, and his motion to dismiss Counts 1-4 should be dismissed on that basis alone.

**b.  18 U.S.C. § 844(g) and 27 C.F.R. Part 555 are not *in pari materia* with 49 U.S.C. §§ 5124 and 46312 and 49 C.F.R. Parts 171- 180.**

The existence of a precise definition of small arms ammunition in the D.O.T. hazardous materials regulations renders moot the defendant's argument that the broader A.T.F. explosives regulations definition of "ammunition"[5] should be applied to those regulations.  An additional reason that the definition of ammunition in the A.T.F. regulations should not be read into the D.O.T. regulations is that 18 U.S.C. § 844(g) and 27 C.F.R. Part 555 are not *in pari materia* with 49 U.S.C. §§ 5124 and 46312 and 49 C.F.R. Parts 171- 180.  The two statutory and regulatory schemes address separate subject matters, intersecting only in the narrowest way.  Moreover, by the plain text of 18 U.S.C. §§ 844(g) and (j) and 845, it is clear that Congress intended that at that intersection, both statutes be applied and enforced independently.

Chapter 40 of Title 18, United States Code (18 U.S.C. § 841 *et seq*.), and

---

[5]  Notably, 27 C.F.R. § 555.11 does not actually *define* the term "small arms ammunition;" rather, it merely includes the *undefined* term "small arms ammunition," along with other items including "cartridge cases, primers, bullets, or smokeless propellants designed for use in small arms" in a list of items which fall under the definition of "ammunition."  This tautological definition is far less precise for the purposes of defining "ammunition for small arms" for the purposes of 49 C.F.R. § 175.10(a)(8) than the very precise definition of "cartridges, small arms" (and by cross-reference, "ammunition, small arms") in 49 C.F.R. 173.59.

the regulations promulgated thereunder, regulate the possession, transfer and use

of explosive materials.  In particular, as relevant to the defendant's argument, 18

U.S.C. § 844(g) prohibits the *possession* of explosives in a federal facility or

airport, but provides two exceptions with respect only to airports: first, it exempts

the *possession* of ammunition (as defined in the A.T.F. regulations discussed

above) in checked baggage or a closed container (18 U.S.C. § 844(g)(2)(A)); and,

second, it exempts the *possession* of an explosive at an airport if the packaging

and transportation of the explosive is in compliance with D.O.T. hazardous

material transportation regulations (18 U.S.C. § 844(g)(2)(B)).  Moreover, 18

U.S.C. § 844(j) defines "explosive" for the purposes of § 844(g) specifically to

include "smokeless powder", and is broad enough to encompass primers.[6]  Finally,

18 U.S.C. § 845(a)(1) provides that only ten discrete subsections of Chapter 40

(including § 844(g)) apply to "aspects of the transportation of explosive materials

via railroad, water, highway, or air that pertain to safety, including security, and

are regulated by the Department of Transportation or the Department of Homeland

Security," affirming the primacy of the Department of Transportation in regulating

---

[6]  In theory, in the Superseding Indictment the government could have alleged a violation of 18 U.S.C. § 844(g)(1), based on the defendant's possession of an explosive not subject to the exception of paragraph (g)(2)(B).  The government has to date elected not to do so.

the safe transport of explosives.

In contrast, Chapter 51 of Title 49, broadly regulates the transportation of
hazardous materials, and requires the Transportation Secretary to prescribe
regulations for the safe transportation, including security, of hazardous material in
intrastate, interstate, and foreign commerce.  The Transportation Secretary has
issued regulations in compliance with 49 U.S.C. § 5103(a) and (b) in a
comprehensive regulatory scheme which includes the regulations relating to the
transportation of explosives the defendant is charged with criminally violating.
The specific hazardous materials in the defendant's checked baggage are classified
as explosives by the regulations, and are prohibited from carriage on passenger
aircraft under all circumstances (in the case of the Triple Seven pellets) or severely
restricted (in the case of the primers).

In *United States v. O'Driscoll*, 761 F.2d 589 (10th Cir. 1985), the Tenth
Circuit stated that:

> When there are two statutes addressing the same general subject
> matter . . ., one being special and one being general, the special act
> controls as effective, and all matters coming within the scope of the
> special act are governed by its provisions. *Preiser v. Rodriguez*, 411
> U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Glover Const. Co. v.
> Andrus*, 591 F.2d 554, 561 (10th Cir.1979), *affd* 446 U.S. 608,
> (1980); *Missouri K. & T. Ry. Co. v. Jackson*, 174 F.2d 297 (10th

Cir.1949) . . .. Statutes are to be construed in a manner as to effectuate
the intent and interest of the enacting body.  In *Glover, supra*, we
quoted *Sutherland, Statutory Construction*, 4th Ed., Vol. 2A, § 51.05
as follows:

> General and special acts may be *in pari materia*. If so,
> they should be construed together. When one statute
> deals with a subject in general terms, and another deals
> with a part of the same subject in a more detailed way,
> the two should be harmonized if possible; but if there is
> any conflict, the latter will prevail, regardless of whether
> it was passed prior to the general statute, unless it
> appears that the legislature intended to make the general
> act controlling.... 591 F.2d at 561.

*O'Driscoll*, 761 F.2d at 598 (other internal citations omitted); *see also United*

*States v. Phommachanh*, 91 F.3d 1383, 1386 (10th Cir. 1996) (same).

In this case, Chapter 51 of Title 49 and its regulations and associated

criminal penalties are the specific statutory scheme relating to the transportation of

hazardous materials.  Congress recognized this in the various provisions of Title

18, Ch. 40, the plain language of which clearly demonstrate congressional intent

that Title 49 and the regulations issued under it control the transportation of

explosives.  18 U.S.C. § 844(g)(2)(B) specifically cross-references the D.O.T.

regulations, exempting explosives from the general prohibition on possession at

airports only if the D.O.T. regulations are satisfied.  Additionally, 18 U.S.C. § 845,

using language that precisely tracks that of 49 U.S.C. § 5103((b), broadly exempts

the transportation of explosives from the application of Title 18 Chapter 40.

Thus, the hazardous materials regulations defining ammunition in a manner that excludes smokeless powder pellets and shellshot primers, defining these same items as explosives[7], and excluding them from the "small arms ammunition" exemption in 49 C.F.R. § 175.10(a)(8) govern this case, the definition of "ammunition" in 27 C.F.R. § 555.11 is inapplicable, and the defendant's motion to dismiss Counts 1-4 on such grounds should be denied.

B. *The defendant's void-for-vagueness challenge fails because the defendant cannot state a facial challenge to the statutes, an as-applied challenge is not determinable pre-trial, and in the alternative, the statutes are not impermissibly vague as applied to the defendant.*

The defendant argues that Counts 1-4 must be dismissed because the statutes and regulations he is charged with violating are unconstitutionally vague. When determining whether a law is unconstitutionally vague, the core inquiry is whether the crime is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest," *Dodger's Bar & Grill v. Johnson County Bd. of County Comm'rs*, 32 F.3d 1436, 1443 (10th Cir.1994) (citation omitted), and whether the

---

[7] Definitions that, as noted above, are harmonious with the definition of explosives in 18 U.S.C. §§ 844(g) and (j).

law is written in a manner that does not encourage arbitrary and discriminatory enforcement, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  Thus, a statute may be unconstitutionally vague under the Due Process Clause for either of two reasons: (1) if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) if it "authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)).

> 1. *The defendant cannot state a facial void-for-vagueness challenge to the statutes, and an as-applied challenge is not determinable pre-trial.*

However, before the Court can reach the merits of these questions, it must first determine whether the defendant's challenge is facial, or to the law as applied.  The defendant has not clearly stated whether he is challenging the statute involved in this case facially, or as applied; he merely has asserted in a footnote to his Memorandum in Support that a "challenge to a statute's vagueness is permissible pretrial."  Defendant's Memorandum in Support at 16, fn. 1.  In either case, the defendant's motion should be denied, because he cannot make out a proper facially-vague challenge, and a vagueness challenge to a statute as applied is not amenable to pretrial determination.

Facial challenges to statutes as unconstitutionally vague are permitted only in two narrow circumstances – first "when [the statute] threatens to chill constitutionally protected conduct," particularly, the exercise of First Amendment rights, and, second, in a pre-enforcement, declaratory judgment action alleging that enforcement of the statute is void in all its applications. *United States v. Gadeau*, 860 F.2d 357, 360-61 (10th Cir. 1988). The instant case meets neither criteria. The statutes and regulations involved do not impinge on or affect conduct protected by the First Amendment, and the defendant's challenge is post-enforcement. Thus, the defendant cannot make out a facial void-for-vagueness claim.

Treating the defendant's challenge as one of as-applied, then, it still must be dismissed as not amenable to pretrial determination. In *United States v. Reed*, 114 F.3d 1067 (10th Cir. 1997), the Tenth Circuit held that it "was error" to consider a void-for-vagueness-as-applied challenge at the "preliminary stage of the proceedings . . ." Since an as-applied challenge "must be limited to the application of the statute to the particular conduct charged," "such a sensitive and fact intensive analysis . . . should be based only on the facts as they emerge at trial." *Reed*, 1067 F.3d at 1070; *accord.*, *United States v. Evans*, 318 F.3d 1011,

1016; *United States v. Pope*, ___ F.3d ___, 2010 WL 2872482 at *3 (10th Cir. July

23, 2010).  Because the defendant's as-applied challenge to the statutes at issue in

this case may not be determined pre-trial, his motion to dismiss Counts 1-4 on that

basis should be denied.

> 2.  *In the alternative, the statutes are not impermissibly vague as applied to the defendant.*

Without abandoning its procedural argument in Section V.B.1. above, and

in an effort to assist the Court, the government proffers the following additional,

substantive reasons why the defendant's motion to dismiss Counts 1-4 on void-

for-vagueness grounds fails.

As already noted, the void-for-vagueness analysis consists of two parts –

first, whether the statute provides the defendant with fair notice that the

contemplated conduct violates the law, and second, whether the statutory scheme

authorizes or encourages arbitrary enforcement.  The defendant challenges the

statutes and regulations in this case on both elements.  His claim under the fair

notice element fails, however, because "one 'to whose conduct a statute clearly

applies may not successfully challenge it for vagueness.'" *United States v.*

*Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009) (quoting *United States v. LaHue*,

261 F.3d 993, 1005 (10th Cir. 2001)).

Defendant's conduct in this case plainly is covered by the statutes he is charged with violating in Counts 1-4 of the Superseding Indictment. Counts 1 and 3 relate to his presenting for transportation on a passenger plane a hazardous material, Hogdgon Triple Seven Pellets, a "Propellant, Solid" classified as a Division 1.3C explosive under D.O.T. regulations. Counts 2 and 4 relate to his presenting for transportation on a passenger plane a hazardous material, CCI 209M Shotshell Primers, "Primers, Cap Type" classified as a Division 1.4S explosive. The undisputed facts alleged in the Superseding Indictment demonstrate that the defendant had these hazardous materials, concealed in expended shotgun shells, in the baggage he presented for placement on the aircraft; that the D.O.T. has classified these materials as explosives; and that prior to submitting his bags for placement on the aircraft, the defendant was advised that other patent quantities of the Hodgdon Triple Seven Pellets were forbidden on passenger aircraft, and that other patent quantities of the the CCI 209M Shotshell Primers were a regulated hazardous material that had not been properly prepared for transportation. It also is undisputed that regulations relating to the carriage of hazardous materials on aircraft apply to passengers such as the defendant. Thus,

-34-

his "conduct is the very conduct contemplated by the [statutes], and [he] cannot

successfully challenge [the statutes] for vagueness as to fair notice." *LaHue*, 261

F.3d at 1005.[8]

Defendant's only argument in support of his contention that the statutes are

unconstitutionally vague as applied to him, is his contention that the definition

ammunition in 27 C.F.R. § 555.11 is different from the definition of small arms

ammunition in the D.O.T. regulations, as discussed above.  This argument misses

the mark, because as applied to him, the violations charged in the Superseding

Indictment is presentment of restricted explosives for carriage on a passenger

aircraft, and the particular explosives did not meet the definition of ammunition in

the relevant regulations.  Thus, the explosives he presented for transportation did

not qualify for the exemption reserved for small arms ammunition.  Moreover, the

explosives were additionally disqualified from the small arms ammunition

exemption by the manner in which they were offered for transportation by the

defendant: whatever else might be said, concealing loose explosive smokeless

powder pellets and loose explosive primer caps in expended shotgun shells in

---

[8]  The government additionally notes that both 49 U.S.C. § 5124 and 49 U.S.C. § 46312 expressly provide that knowledge of the regulations and statutes is not an element of the offenses charged.

which they may rattle around is decidedly <u>not</u> small arms ammunition " securely

packed in boxes or other packagings specifically designed to carry small amounts

of ammunition," as required by 49 C.F.R. § 175.10(a)(8).  This regulation also

applied to the defendant, and his conduct falls squarely within it under his own

theory of the case.  Again, it is the exact conduct contemplated by the statutes, and

he cannot successfully challenge the statutes for vagueness as to fair notice.

The defendant's argument for unconstitutional as-applied vagueness under

the arbitrary enforcement element fails for similar reasons.  "A statute is

unconstitutionally vague if its language and construction by the courts vest

authority in law enforcement officers, prosecutors, and juries to assign their own

subjective meaning to an element of the offense." *LaHue*, 261 F.3d at 1006.

The defendant's contention that the statutes involved in this case fail this

test, depends, however, on the incorrect presumption that the D.O.T. regulations

do not contain a definition of ammunition that may be applied with certainty and

precision to the small arms exception in the D.O.T. regulations.  As has been

discussed, such a definition in fact exists, and excludes the explosives offered for

transport by the defendant.  Moreover, there are specific definitions for those

explosives in the D.O.T. regulations.

-36-

The defendant makes much of the fact that definition of ammunition in 27
C.F.R. § 555.11 differs from that in the D.O.T. regulations, speculating about what
various hypothetical prosecutors might do and arguing that this permits arbitrary
enforcement.  The argument fails for two reasons, however.  First, the definitions
relevant to the as-applied challenge relate to explosives, not ammunition, and are
harmonious, not dissonant.  18 U.S.C. § 844(j) defines explosives for the purposes
of 18 U.S.C. § 844(g) to include smokeless powder and primers, a definition
consistent with how these items are treated in Title 49 and 49 C.F.R.  Moreover,
the possession of these explosives at an airport would violate 18 U.S.C. § 844(g)
only if they also violated the regulations and statutes under Title 49.  *See* 18
U.S.C. § 844(g)(2)(B).  Such a statutory scheme is the antithesis of one allowing
arbitrary or standardless enforcement.

More importantly, however, the defendant's parade of horribles is wholly
irrelevant to his challenge.  In the context of an as-applied challenge, the
defendant may not generalize beyond the conduct with which he is charged.
*LaHue*, 261 F.3d at 1007.  In this case, as was discussed in relation to the
defendant's fair notice element challenge, the defendant is charged with conduct
relating to the transportation of explosives on passenger aircraft.  There is no

-37-

potential for arbitrary enforcement as the statutes are applied to him, and his

challenge of the statutes in this case as unconstitutionally vague as-applied under

the arbitrary enforcement element fails.

>C. *Application of the statutes and regulations in this case is not an ex post*
>*facto expansion of criminal liability.*

The defendant argues that the charges in the indictment amount to an *ex*

*post facto* clause violation because he claims there has been no notice that the

definition of ammunition in 27 C.F.R. § 555.11 does not apply to the small arms

ammunition exemption in 49 C.F.R. 175.10(a)(8).  Like his other arguments,

however, this argument is fatally flawed by its faulty premise that the D.O.T.

regulations do not define ammunition or small arms ammunition for the purposes

of the exemption.

As was demonstrated above, the D.O.T. regulations in fact define these

terms to exclude explosives such as those the defendant presented for carriage on

the plane, and further clearly classify those materials in a manner that explicitly

bans (or, in the case of the primers, severely restricts) them from carriage on

passenger aircraft.  Thus, no novel construction of the statutes and regulations is

required of either the agency or the Court.

Moreover, the general nature of the statutes under which the defendant is charged indicates that their application to any one fact pattern is extremely unlikely to be a novel expansion of existing law.  *See McDonald v. Champion*, 962 F.2d 1455, 1458-9 (10th Cir. 1992).  It is entirely foreseeable that a general statute that prohibits explosives and other hazardous materials on airplanes can be applied to the defendant's conduct.  Further, the Supreme Court has indicated that the degree of surprise required to invalidate a conviction under a "novel construction" theory is such as to require the court's construction to be "indefensible by reference to the law which has been expressed".  *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964).  The "law which has been expressed" in this case are the statutes and regulations themselves.  Since no novel construction is required, and the Court's construction should be governed by the plain language of the statutes and regulations, such an interpretation is defensible and indeed predictable.  The defendant's motion to dismiss on the grounds of novel interpretation should be denied.

D.  *The rule of lenity does not apply in defendant's case.*

The defendant argues that under the rule of lenity, Counts 1-4 of the Superseding indictment should be dismissed.  This argument is closely related to

the defendant's void-for-vagueness argument, and falls with it.

When a criminal statute is ambiguous, the rule of lenity requires that the defendant receive the benefit of the doubt. *United States v. Bass*, 404 U.S. 336, 347-8 (1971), *United States v. Michel*, 446 F.3d 1122, 1135 (10th Cir. 2006).  The rule of lenity applies when there is enough ambiguity in the law that there is a reasonable choice between two alternatives, one of which treats the defendant more harshly than the other.  *United States v. Campos-Serrano*, 404 U.S. 293, 297 (1971), *United States v. Giles*, 213 F.3d 1247, 1249 (10th Cir. 2000).

However, the rule of lenity only applies when the statute is so unclear that standard statutory interpretation provides no guide as to its meaning.  *United States v. DeGasso*, 369 F.3d 1139, 1149-1150 (10th Cir. 2004).  The Tenth Circuit has explained further that the rule of lenity cannot be invoked by a mere "grammatical possibility" or by an implausible or difficult reading of a federal statute.  *Id.*  Most importantly, the rule of lenity is not to be applied when the result would yield results contrary to congressional policy.  *Id.*  As discussed above, 18 U.S.C. §§ 844(g)(2)(B) and 845 express a clear congressional intent that D.O.T. regulations govern the transportation of explosives such as are involved in this case, and even their possession at an airport.

-40-

The defendant again rests his whole argument on the incorrect propositions that the D.O.T. regulations do not define small arms ammunition, and that his explosives fell into the exemption for small arms ammunition in 49 C.F.R. § 175.10(a)(8).  As discussed above, the statutes and regulations involved in this case are not ambiguous.  The application of the rule of lenity is limited to those cases "where, after reviewing all the available material, the court is still left with an ambiguous statute." *United States v. Fillman*, 162 F.3d 1055, 1058 (10th Cir. 1998) (quoting *United States v. Wilson*, 10 F.3d 734, 736 (10th Cir. 1993) (other citations omitted).  That is not the case here.  The defendant's rule of lenity challenge to Counts 1-4 of the Superseding Indictment should fail.

   E.  *The Defendant's Motion to Dismiss additionally fails because it calls for resort to disputed facts outside the Superseding Indictment and raises an affirmative defense*.

The defendant's Motion to Dismiss should be denied with respect to each count for the additional reason that in each instance, resolution of the defendant's motion requires the Court to consider, and resort to, disputed facts outside the four corners of the Superseding Indictment.

The Court only has authority to dismiss charges at the pretrial stage "under the limited circumstances where the operative facts are undisputed and the

-41-

government fails to object to the [court's] consideration of those undisputed facts in making the determination regarding a submissible case." *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994). In this case, however, each of the defendant's challenges to the five separate counts in the Superseding Indictment also relies on disputed facts not contained in the Superseding Indictment, and raises an affirmative defense, taking his motion out of the narrow ambit of cases amenable to pretrial disposition.

Even if the Court were to find the "small arms ammunition exemption" to the prohibition on carriage of the Triple Seven pellets and primers in his checked baggage applicable to the defendant, his conduct would <u>still</u> be in violation of the law as alleged in the  Superseding Indictment if the Triple Seven pellets and the primers were not "securely packed in boxes or other packagings specifically designed to carry small amounts of ammunition," as required by the regulations, *see* 49 C.F.R. § 175.10(a)(8). The defendant's motion assumes this contested "fact" without evidence, and in order to grant the defendant's motion, the Court would have to do the same. These "facts" are not contained in the Superseding Indictment, and not only are they not agreed to, as was discussed above, they are sharply contested by the United States.

-42-

This is both a factual dispute and raises an affirmative defense which "implicates trial of the general issue.[9]   *United States v. Pope*, ___ F.3d ___, 2010 WL 2872482 (10th Cir. July 23, 2010) at *6 (citing  *United States v. La Cock*, 366 F.3d 883, 889 (10th Cir.2004) (holding that "a contested affirmative defense" generally "should be resolved at trial, not during a motion to dismiss the indictment")).

Similar to the situation in *Pope*, which involved a challenge to the as-applied constitutionality laws regulating the possession of firearms by convicted criminals, the defendant in this case "seeks to vindicate an affirmative defense bearing directly on his guilt or innocence, arguing that he cannot be guilty" of the offenses charged because he qualified for an exemption to the general prohibition on bringing certain hazardous materials on board a passenger aircraft.  *Pope* at *5; *see also La Cock*, 366 F.3d at 889 (citing *United States v. Neal*, 692 F.2d 1296, 1303 (10th Cir. 1982)) (whether destructive device was designed for use as a weapon an affirmative defense).  Also as in *Pope*, the facts and circumstances

---

[9]  With respect to Count 5, alleging a violation of 18 U.S.C. § 1001, the defendant's challenge actually raises *two* affirmative defenses – the first that the materials were not prohibited due to the regulatory exemption for small arms ammunition, and a second, which depends on the first, that his statements were literally true.  This second affirmative defense is addressed in greater detail *infra*.

surrounding the commission of the offense in this case are relevant to determining

his defense, and are disputed.  Not only is it disputed whether the Triple Seven

pellets and primers were small arms ammunition under any definition, it also is

disputed whether the items were securely packaged in order to qualify for the

exemption.  Thus, as in *Pope*, the defendant's case does not involve a "pure

question of law, the facts charged in the indictment itself, or agreed extra-

indictment facts," but rather requires a trial of the general issue.  *Id.* at *5-*6.

The Court only has authority to dismiss charges at the pretrial stage "under

the limited circumstances where the operative facts are undisputed and the

government fails to object to the [court's] consideration of those undisputed facts

in making the determination regarding a submissible case."  *United States v. Hall*,

20 F.3d 1084, 1088 (10th Cir. 1994).  This case is not one of those "rare

exception[s]," *id.*, and the defendant's motion to dismiss should be denied.

F. *The "literal truth" defense does not apply to Count 5.*

The defendant argues that Count 5 of the Superseding Indictment should be

dismissed because his statements to officers denying that he had any other

prohibited items were literally true.  This challenge should be denied for several

reasons.  First, as was just discussed above, it requires the Court to find facts

-44-

outside the four corners of the indictment, that is, that the explosives in the defendant's checked baggage were not prohibited items, and that his negative response was "literally true".  It additionally goes to the heart of what the "general issue" is in the case – whether the defendant's statements were false.  Indeed, the falsity of the defendant's statements  as alleged in Count 5 of the Superseding Indictment is "the general issue" in this case with respect to this count.  *See United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978).  "Until the matter is put to trial before the trier of fact, the district court has no jurisdiction to decide a defendant's innocence or guilt."  *Id.*

As in *King*, the defendant here has made no credible contention that the indictment does not charge an offense against the United States.  If the Court dismisses Count 5 on the proffered basis, "the dismissal [would be] in effect a determination of guilt made at a point in the proceedings when [the court is] without jurisdiction to render it." *King*, 581 F.2d at 802.

Lastly, the defendant's "literal truth" doctrine defense fails by the very terms of the doctrine itself, which is restricted to answers to ambiguous questions which may be non-responsive, but are literally true.  *See United States v. Hudson*, 813 F.Supp. 1482, 1492-93 (D.Kan. 1993) (citing *Bronstron v. United States*, 409

-45-

U.S. 352 (1973); *United States v. Vesaas*, 586 F.2d 101, 103-04 (8th Cir. 1978)).

Rather, as in *Hudson*, the defendant's statements in this case were responses to

"direct, unambiguous questions," *Hudson*, 813 F.Supp. at 1493, i.e., 'do you have

any other prohibited items or black powder to declare or disclose?' As in *Hudson*,

"[w]hether his answers were literally true [is] a question of fact for the jury . . .."

*Id.* The defendant's motion to dismiss Count 5 of the Superseding Indictment

should be denied.

### VI.  Conclusion

For the reasons set forth herein, the defendant's motion to dismiss the

Superseding Indictment and the five counts therein should be denied in its entirety

with respect to each count.

Respectfully submitted and

DATED:      September 3, 2010.

CARLIE CHRISTENSEN
United States Attorney

/s/ *Michael Kennedy*
_____

MICHAEL KENNEDY
Assistant United States Attorney

-46-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of the United States

Attorney's Office, and that a copy of the foregoing MEMORANDUM IN

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE

SUPERSEDING INDICTMENT was caused to be served on all persons named

below, either by electronic filing notice, U.S. Mail (postage prepaid), or hand

delivery, on September 3, 2010.


Rebecca Hyde Skordas
Attorney for Joseph Peter Moesser
341 South Main Street, Ste. 303
Salt Lake City, UT 84111


/s/ *Michael Kennedy*
_____