IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br><br><br><br><br><br>                vs.<br><br><br>JOSEPH PETER MOESSER,<br><br>           Defendant. | MEMORANDUM DECISION AND ORDER DENYING IN PART AND DEFERRING RULING ON THE REMAINING ISSUES RAISED IN DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT<br><br><br><br><br>Case No. 2:09-CR-842 TS |

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss the Superseding Indictment.[1]  Defendant argues that dismissal of the Superseding Indictment is appropriate because the hazardous materials regulations governing the transportation of smokeless powder and primers on passenger aircraft fail to define "small arms ammunition for personal use" which is an exception in the DOT regulations at 49 C.F.R. § 175.10(a)(8).  To provide a definition,

---

[1]Docket No. 42.

1

Defendant argues that the Court should interpret the small arms ammunition exception *in pari materia* with the ammunition exception to the ATF regulations regarding possessing explosives in airports found at 27 C.F.R. § 555.11.  Additionally, Defendant argues for dismissal on grounds of facial vagueness, as-applied vagueness, and lenity.

As explained below, the Court denies the Motion regarding the *in pari materia* and facial vagueness arguments.  The Court finds there is good cause to defer ruling on the vagueness as applied and lenity arguments until during or after trial when the facts of the case are more clear.[2]  The Court may request additional briefing on the matter at that time.

For purposes of this Order, the Court considers all of the allegations of the Superseding Indictment[3] as true.  In considering a motion to dismiss an indictment it is only proper to consider facts not contained in the indictment where those additional facts are undisputed and the government does not object to their consideration.[4]  The government objects to consideration of facts outside of the Superseding Indictment.  Consequently, the Court may only consider the facts as described within the four corners of the Superseding Indictment.[5]

## II.  BACKGROUND

On October 1, 2009, Defendant entered Salt Lake International Airport en route to South Africa.  Inside a duffle bag, Defendant carried a metal box that contained (1) an "unopened,

---

[2]Fed. R. Crim. P. 12(d).

[3]Docket No. 36.

[4]*United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994).

[5]*United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).

2

commercially packaged container of 'Hodgdon Triple Seven Pellets,'" which are pellets of smokeless powder used in muzzleloader rifles; (2) an opened, partially empty package of Hodgdon Triple Seven Pellets; (3) an opened, partially empty commercially packaged container of "CCI 209M Shotshell Primers"; and (4) two full boxes of "25-count Winchester XX 12 gauge shotgun shells."[6]   In both boxes of shotgun shells, the top row of shells appeared to be commercially produced, new, unexpended shells with their primers intact.   However, the remaining forty shells had expended primers and had been refilled with other materials—thirty-eight contained Hodgdon Triple Seven Pellets and the other two shell casings contained multiple CCI 209M Shotshell Primers.[7]

Prior to checking his luggage, Defendant was approached by law enforcement agents from the FBI,[8] TSA,[9] and FAA[10] and asked if he had any ammunition in his checked or carry-on luggage.   Defendant agreed to a search of his luggage.   In the course of this initial search, the agents informed Defendant that Triple Seven Pellets were not permitted on passenger aircraft. They further stated that the primers were a hazardous material and were not properly prepared for transportation.   Defendant surrendered the pellets and primers.   The officers next opened the boxes of shotgun shells and visually inspected the top row of shells.   Upon seeing the shells were

---

[6]Docket No. 36, at 2.

[7]*Id.* at 4.

[8]U.S. Department of Justice, Federal Bureau of Investigation.

[9]U.S. Department of Justice, Transportation Security Administration.

[10]U.S. Department of Homeland Security, Federal Aviation Administration.

new shells, the agents did not seize the shotgun shells.  They asked Defendant if he had any other

"prohibited items or 'black powder' to declare or disclose, and [Defendant] stated that he did

not."[11]  Defendant then placed the shotgun shells back in the metal box, returned the box to his

luggage, proceeded to the check-in counter, and checked his luggage containing the metal box

which contained the shotgun shells.[12]  Later, the luggage triggered an alarm that prompted a TSA

officer to manually inspect the container and its contents.  At that time it was discovered that the

lower levels of shells had been previously fired and refilled with either Hodgdon Triple Seven

Pellets or CCI 209M Shotshell Primers.

Defendant was indicted on November 4, 2009.  On May 12, 2010, Defendant filed a

Motion to Dismiss the Indictment, and on June 30, 2010, the government filed a Superseding

Indictment containing five counts of criminal activity.  Defendant is charged with one count of

delivering, for purposes of transportation in air commerce, the hazardous material Hogdgon

Triple Seven Pellets in violation of 49 C.F.R. §§ 172.101, 173.27(b), and 175.1(b)(2), and 49

U.S.C. § 46312; one count of delivering, for carriage on passenger aircraft, improperly packaged

CCI 209 Shotshell Primers in violation of 49 C.F.R. §§ 172.101, 172.200 *et seq.*, 172.300 *et seq.*,

172.400 *et seq.*, 173.27(b), 173.62, 175.1(b)(2), and 175.3, and 49 U.S.C. § 46312; one count of

offering for carriage in checked baggage the hazardous material Hogdgon Triple Seven Pellets in

violation of 49 C.F.R. §§ 172.101, 173.27(b), and 175.1(b)(2), and 49 U.S.C. § 5124; one count

of offering for carriage in checked baggage improperly packaged CCI 209M Shotshell Primers in

---

[11]Docket No. 36, at 3.

[12]*Id.* at 2-3.

vioaltion of 49 C.F.R. §§ 172.101, 172.200 *et seq.*, 172.300 *et seq.*, 172.400 *et seq.*, 173.27(b),

173.62, 175.1(b)(2), and 175.3, and 49 U.S.C. § 5124; and one count of knowingly and willfully

making false statements to special agents of the FBI, TSA, and FAA, in violation of 18 U.S.C. §

1001(a)(2), by stating he had no other forbidden items.

## III.  DISCUSSION

The issue before the Court is whether the smokeless powder and primers packaged in the

shotgun shells fall under an exception in the regulations for "small arms ammunition for personal

use" and are consequently exempted from the Department of Transportation ("DOT") regulations

governing hazardous materials.  Defendant argues the DOT regulations fail to define "small arms

ammunition for personal use" and that the Court should (1) interpret the DOT small arms

ammunition exception to have the same meaning as the ATF[13] ammunition exception, which

does exempt smokeless powder and primers for personal use from the regulations governing

possession of explosives in airports; (2) find the regulations unconstitutionally vague both on

their face and as applied; and (3) dismiss the Superseding Indictment due to the rule of lenity.

As discussed below, the Court denies Defendant's Motion in regards to the adoption of

the ATF language and the facial vagueness arguments.  It defers ruling on the vagueness as

applied and lenity arguments until the facts of the case are more clear.

---

[13]U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives.

A.     LEGAL STANDARD

A party may move to dismiss an indictment under FED. R. CRIM. P 12(b)(2).[14]  A

challenge to an indictment generally does not open the door to questioning the strength of the

government's case or its evidence because the "indictment should be tested solely on the basis of

the allegations made on its face, and such allegations are to be taken as true."[15]  When reviewing

a motion to dismiss an indictment, the question is only "whether the allegations in the

indictment, if true, are sufficient to establish a violation of the charged offense."[16]

The Court may grant the motion if the motion only addresses a pure question of law.[17]

However, such dismissals "are the 'rare exception.'"[18]  This is because dismissal of an indictment

is only proper when "'undisputed evidence shows that, as a matter of law, the Defendant could

not have committed the offense for which he was indicted."[19]  "If contested facts surrounding the

commission of the offense would be of *any* assistance in determining the validity of the motion,

Rule 12 doesn't authorize its disposition before trial."[20]  The Tenth Circuit has explained the two

key justifications for this rule.  First, the rule "respect[s] the role of the jury"; and second, in

---

[14]*Hall*, 20 F.3d at 1086-87.

[15]*Id.* at 1087 (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962)).

[16]*Id.*

[17]*See United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010).

[18]*Id.* (quoting *Hall*, 20 F.3d at 1088; citing *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)).

[19]*Id.* (quoting *Todd*, 446 F.3d at 1068).

[20]*Id.* at 1259 (emphasis in original).

6

some instances, "evidence adduced at trial can provide a 'more certain framework' for its analysis."[21]

B.    DEFINITION OF SMALL ARMS AMMUNITION FOR PERSONAL USE

The United States Code requires that the Secretary of Transportation designate which materials are hazardous and requires that the Secretary create regulations governing the "safety aspects, including security, of the transportation" of these materials.[22]   The statute states that neither the statute (codified at 49 U.S.C. §§ 5101-5126) nor its corresponding regulations prohibit "or regulate the transportation of a firearm (as defined in section 232 of title 18), or ammunition for a firearm, by an individual for personal use . . . ."[23]   The corresponding DOT regulations governing the transportation of hazardous materials are found in the Code of Federal Regulations ("C.F.R.") Title 49, Parts 171 through 180.  The issue before the Court is not whether smokeless powder and primers are covered by the DOT regulations, but rather if they are included in the regulations' small arms ammunition exception.

1.    *Pertinent Sections of the DOT Regulations*

The Table of Hazardous Materials and Special Provisions ("Table of Hazardous Materials" or "Table"), located at 49 C.F.R. § 172.101, provides an extensive list with classifications and other information on all of the hazardous materials covered under the regulations.  The Table prohibits the transportation of smokeless powder on passenger aircraft.  It

---

[21]*Id.*

[22]49 U.S.C. § 5103(a)-(b)(1).

[23]*Id.* § 5117(d)(2).

provides four categories, or "shipping names," of smokeless powder and bans them all from

passenger aircraft.[24]   The Table also lists primers as a hazardous material.  It provides three

categories, or "shipping names," of cap type primers and another potential shipping name

applicable in this case, "Cases, cartridges, empty with primer."[25]   Because primers are listed in

the Hazardous Materials Table, they may only be offered for transportation in commerce if

"properly classed, described, packaged, marked, labeled, and in condition for shipment as

required or authorized by applicable requirements" of the regulations unless an exception

applies.[26]

Section 175.10 provides exceptions to the hazardous materials regulations for aircraft

passengers.[27]   The section states in part:

> (a) This subchapter does not apply to the following hazardous materials when
> carried by aircraft passengers . . . :
>      8) **Small arms ammunition for personal use carried by a crewmember
> or passenger in checked baggage** only, if securely packed in boxes or other
> packagings specifically designed to carry small amounts of ammunition.
> Ammunition clips and magazines must also be securely boxed.  This paragraph
> does not apply to persons traveling under the provisions of 49 CFR 1544.219.[28]

Another section that is relevant to this matter is § 173.59, Description of terms for explosives,

which states in part:

---

[24]49 C.F.R. § 172.101.

[25]*Id.*

[26]*Id.* § 171.2(e)

[27]*Id.* § 175.10.

[28]*Id.* § 175.10(a)(8) (emphasis added).

For the purpose of this subchapter, a description of the following terms is provided for information only.  They must not be used for purposes of classification or to replace proper shipping names prescribed in Sec. 172.101 of this subchapter.

. . . .

Ammunition.  Generic term related mainly to articles of military application consisting of all types of bombs, grenades, rockets, mines, projectiles and other similar devices or contrivances.

. . . .

Ammunition, incendiary.  Ammunition containing an incendiary substance which may be a solid, liquid or gel including white phosphorus.  Except when the composition is an explosive per se, it also contains one or more of the following: a propelling charge with primer and igniter charge, or a fuze with burster or expelling charge.  The term includes: Ammunition, incendiary, liquid or gel, with burster, expelling charge or propelling charge; Ammunition, incendiary with or without burster, expelling charge or propelling charge; and Ammunition, incendiary, white phosphorus, with burster, expelling charge or propelling charge.

. . . .

Cartridges, small arms.  Ammunition consisting of a cartridge case fitted with a center or rim fire primer and containing both a propelling charge and solid projectile(s).  They are designed to be fired in weapons of caliber not larger than 19.1 mm.  Shotgun cartridges of any caliber are included in this description.  The term excludes: Cartridges, small arms, blank, and some military small arms cartridges listed under Cartridges for weapons, inert projectile.

. . . .

Powder, smokeless.  Substance based on nitrocellulose used as propellant. The term includes propellants with a single base (nitrocellulose (NC) alone), those with a double base (such as NC and nitroglycerin (NG)) and those with a triple base (such as NC/NG/nitroguanidine).  Cast pressed or bag-charges of smokeless powder are listed under charges, propelling and charges, propelling for cannon.

Primers, cap type.  Articles consisting of a metal or plastic cap containing a small amount of primary explosive mixture that is readily ignited by impact. They serve as igniting elements in small arms cartridges and in percussion primers for propelling charges.[29]

Neither this section of descriptions, nor any other section of the regulations provide a description

of small arms ammunition.

---

[29]*Id.* § 173.59.

*2. Whether the DOT Regulations Define Small Arms Ammunition For Personal Use*

As the above regulations show, it is not clear what the small arms ammunition for

personal use exception found in § 175.10(a)(8) exempts.  Section 175.10(a) provides exceptions

for numerous items that may otherwise be prohibited on passenger aircraft.  Generally, these

exceptions are well defined.  For example, regarding hair curlers the DOT exception states:

> (6) Hair curlers (curling irons) containing a hydrocarbon gas such as
> butane, no more than one per person, in carry-on or checked baggage.  The safety
> cover must be securely fitted over the heating element.  Gas refills for such curlers
> are not permitted in carry-on or checked baggage.[30]

In contrast, § 175.10(a)(8) fails to provide a description of small arms ammunition for personal

use or contextual clues that would prove helpful in determining if smokeless powder and primers

for use in muzzleloading rifles are included within the exception.

The government argues that the DOT regulations, when considered as a whole, do not

include smokeless powder or primers in the small arms ammunition exception.  The Hazardous

Material Table, under "Ammunition, SA (small arms)," refers the reader to the term in the table

"Cartridges for weapons, etc."[31]  One of nearly thirty subcategories of Cartridges for weapons is

"Cartridges, small arms."  While the table does not provide a cross reference, the regulations

provide a description of "Cartridge, small arms" at § 173.59, which states:

> Ammunition consisting of a cartridge case fitted with a center or rim fire primer
> and containing both a propelling charge and solid projectile(s).  They are designed
> to be fired in weapons of caliber not larger than 19.1 mm.  Shotgun cartridges of
> any caliber are included in this description.  The term excludes: Cartridges, small

---

[30]*Id.* § 175.10(a)(6).

[31]*Id.* § 175.10.

arms, blank, and some military small arms cartridges listed under Cartridges for weapons, inert projectile.[32]

The government argues that, after reaching this point in an analysis of the DOT regulations, a reader should know that smokeless powder and primers are not included in the small arms ammunition for personal use exception.

    The Court disagrees with the government's argument and finds that the regulations lack a definition of small arms ammunition.  The Court agrees with Defendant that the specific regulations governing the transportation of ammunition do not speak to the exception for small arms ammunition for personal use.  Furthermore, the language the government relies on does not define small arms ammunition for personal use.

    The Court also disagrees with the government's alternative argument that, regardless of the lack of a clear definition, smokeless powder for use in muzzleloading rifles is clearly banned from passenger aircraft by the Hazardous Materials Table.  This argument fails because there is no way to reconcile this clear ban with the small arms ammunition exception unless the exception provides a definition.  Consequently, the Court must address the arguments raised by Defendant, namely whether the Court should apply a definition from another agency's regulation or whether the Superseding Indictment should be dismissed on vagueness or lenity grounds.

---

[32]*Id.* § 173.59.

C.      *IN PARI MATERIA*

In 1970, Congress passed the Organized Crime Control Act of 1970,[33] which is still in

effect.[34]  Part of this law regulated explosives in airports.  The purpose of the statute is to

> protect interstate and foreign commerce against interference and interruption by
> reducing the hazard to persons and property arising from misuse and unsafe or
> insecure storage of explosive materials.  It is not the purpose of [the statute] to
> place any undue or unnecessary Federal restrictions or burdens on law-abiding
> citizens with respect to the acquisition, possession, storage, or use of explosive
> materials for industrial, mining, agricultural, or other lawful purposes, or to
> provide for the imposition by Federal regulations of any procedures or
> requirements other than those reasonably necessary to implement and effectuate
> the provisions of [the statute].[35]

The Organized Crime Control Act specifically states that possessing ammunition in checked

baggage in airports was not punishable under the law:

> (1) Except as provided in paragraph (2), whoever possesses an explosive
> in an airport that is subject to the regulatory authority of the Federal Aviation
> Administration . . . shall be imprisoned for not more than five years, or fined
> under this title, or both.
> (2) The provisions of this subsection shall not be applicable to—(A) the
> possession of ammunition (as that term is defined in regulations issued pursuant
> to this chapter) in an airport that is subject to the regulatory authority of the
> Federal Aviation Administration if such ammunition is either in checked baggage
> or in a closed container . . . .[36]

---

[33]Pub. L. 91-452.

[34]18 U.S.C. § 841 et. seq.

[35]Pub. L. 91-452 § 1101.

[36]18 U.S.C. § 844(g)(2).

The ATF created regulations, as authorized in the Organized Crime Control Act, to supplement and clarify the Act regarding possession of explosives in airports.[37]   The regulations include the following definition of ammunition: "Small arms ammunition or cartridge cases, *primers*, bullets, or *smokeless propellants* designed for use in small arms, including percussion caps, and 3/32 inch and other external burning pyrotechnic hobby fuses. The term does not include black powder."[38]   Thus, under the ATF regulation and its governing statute, an individual may enter an airport with smokeless powder and primers as long as these items are located in "checked baggage."

Defendant and Amicus[39] argue that the Court should use the canon of construction *in pari materia* to apply the ATF definition of excepted ammunition to the DOT exception for small arms ammunition.

*In pari materia*, meaning in the same matter, is a legal concept that encourages courts, when interpreting a vague statute, to look to another statute on the same subject.[40]   This canon of construction stands for the proposition that "courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes."[41]   In *Branch v. Smith*, the U.S. Supreme Court plurality further explained:

---

[37]18 U.S.C. § 842.  The statute authorizes the U.S. Attorney General to create the regulations.  The ATF is a division under the direction of the Attorney General.

[38]27 C.F.R. § 555.11 (emphasis added).

[39]The National Rifle Association.

[40]BLACK'S LAW DICTIONARY 794 (7th ed. 1999).

[41]*Branch v. Smith*, 538 U.S. 254, 281 (2003) (Scalia, J., plurality).

13

> The correct rule of interpretation is, that if diverse statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them. . . .  If a thing contained in a subsequent statute, be within the reason of a former statute, it shall be taken to be within the meaning of that statute . . . ; and if it can be gathered from a subsequent statute *in pari materia*, what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.[42]

The policy supporting *in pari materia* is that "a legislature does not deliberately enact inconsistent provisions, when it is cognizant of them both, without expressly recognizing the inconsistency."[43]  In other words, the canon is based on the idea that a lawmaking body will not pass a law that conflicts with a prior law it has passed without recognizing that contradiction.

As noted, it is Defendant's and Amicus' position that, in the absence of a definition in the DOT regulations for "small arms ammunition," the Court should rely on *in pari materia* to define that term consistent with the ATF regulation.  The Court is concerned with the reasonableness of relying on *in pari materia* to construe regulations from separate and distinct federal regulatory bodies.  At the hearing on the Motion to Dismiss, the Court gave the parties the opportunity to submit additional briefing on the narrow question of whether there is case law to support construing regulations from different agencies *in pari materia*.[44]  Defendant and Amicus submitted briefs.  The government did not, which is unfortunate as it may have proved helpful to the Court.

---

[42]*Id.* (quoting *United States v. Freeman*, 3 How. 556, 564-65 (1845)).

[43]2B Sutherland Statutory Construction 51:1 (7th ed. 2010 (WL updated)).

[44]Docket No. 64.

14

While the briefs of Defendant and Amicus make excellent arguments, there are only two cases provided that directly support construing the regulations *in pari materia*: *United States v. Biocic*, a 1990 case from a district court in Maryland,[45] and *United States v. Olesen*, a 1961 case from a district court in California.[46]

In *Biocic*, the defendant was charged with violating 50 C.F.R. § 27.83—a regulation promulgated by the Fish and Wildlife Service, a bureau in the Department of the Interior—which prohibits "'any act of indecency or disorderly conduct as defined by State or local laws'" on a national wildlife refuge.[47]  The local county had outlawed nudity in public, and Biocic was charged under 50 C.F.R. § 27.83 for sunbathing partially nude.  Biocic argued that the regulation did "not comprehend public nudity as defined" by the local ordinance.[48]  In an extremely brief opinion the court rejected this argument and held:

> Certainly, nudity in public is comprehended within the common meaning of the term "indecency," and the nudity need not involve an accompanying act of obscenity to be indecent.  Rather, it has been held that intentional nudity in a public area of a federal reservation falls within the definition of "indecency" in a regulation that is *in pari materia* with the one at issue here.[49]

---

[45]730 F. Supp. 1364 (D. Md. 1990).

[46]196 F. Supp. 688 (S.D. Cal. 1961).

[47]*Biocic*, 730 F. Supp. at 1365 (quoting 50 C.F.R. § 27.83 (1988)).

[48]*Id.*

[49]*Id.* (citing *United States v. Hymans*, 463 F.2d 615 (10th Cir. 1972)).

15

The court then cited the case of *United States v. Hymans*.[50]  It did not analyze *Hymans* or provide a citation to the regulation that it found to be *in pari materia*, 36 C.F.R. § 251.93.

In *Hymans*, the defendants were charged with violating the Department of Agriculture regulation prohibiting "indecent conduct" after sunbathing nude in a national forest.[51]  The area was posted with signs prohibiting public nudity and was near a public campground.[52]  The defendants challenged whether their actions constituted "indecent conduct" under the Agriculture regulation.[53]  The court held that it was "abundantly clear . . . that the type of public nudity with which we are here concerned is indeed a form of indecent conduct and comes well within the definition of such."[54]

These cases differ from the matter before the Court because neither regulation in *Biocic* nor *Hymans* provided a definition of indecency.  *Hymas* held that public nudity was included in the definition of indecent conduct, and *Biocic* adopted that definition.  Still, the *Biocic* court's use of the term *in pari materia* shows that it was applying what it understood to be the current definition of the regulation, even if it was derived judicially.  Defendant likewise asks this Court to apply the current definition of the ATF regulation to the DOT regulation.

---

[50]*Hymans*, 463 F.2d 615.

[51]*Id.* at 616.

[52]*Id.* at 616, 619.

[53]*Id.* at 618.

[54]*Id.* at 619.

The second case that supports Defendant's argument is *Olesen.* In this case the government charged Olesen with violating a federal regulation that prohibited hunting migratory birds in places where feed for the birds was commonly put out—the proper term for hunting in such areas is baiting.[55]  The federal regulation failed to identify the size of the feeding area from which Oelsen was forbidden to hunt.  Olesen argued that he did not violate the regulation because he was more than 200 feet away from the area where feed was commonly put out, and a state regulation governing baiting established a standard that no hunting could occur within 200 feet of where the feed was located.

The court reasoned that the federal government had failed to define "area" and that the state "regulations are reasonable for the protection of game."[56]  It cited a Supreme Court case for the proposition that the "Constitution presupposes the continued existence of the states functioning in coordination with the national government."[57]  The court held that the federal regulation was *in pari materia* to the state regulation and explained "[w]here 'area' is defined by the State regulation it must be held to have been adopted by the Secretary of Interior where he has continued the federal regulation with knowledge of the existence of the state regulation."[58]

Thus, the *Olesen* court used *in pari materia* to apply a definition from a state regulation to a federal regulation.  While this is not what Defendant seeks, it does support his argument that

---

[55]195 F. Supp. at 689.

[56]*Id.* at 690.

[57]*Id.* at 691 (quoting *Penn Dairies, Inc. v. Milk Control Comm'n*, 318 U.S. 261 (1943)) (internal quotation marks omitted).

[58]*Id.* at 690-91.

17

there is precedent for courts interpreting regulations *in pari materia* even if created by different rulemaking bodies.

The Court finds that the other cases cited by Defendant are not on point. In several of the cases cited by Defendant and Amicus the issue was statutory interpretation—not regulatory interpretation after Congress had delegated authority for the promulgation of the regulations. In the matter before the Court, Congress delegated to both the ATF (Attorney General) and the DOT (Secretary of Transportation) authority to create regulatory schemes governing the possession of explosives in airports[59] and transportation of hazardous materials respectively.[60] The regulations, thus, *create* the legal standard, rather than merely aim to interpret and apply statutory law.

Defendant and Amicus make a strong argument that it is absurd for the ATF regulations to allow a person to enter an airport with smokeless powder and primers secured in luggage the individual intends to check to only then have the DOT regulations classify the powder and primers as an unlawful explosive when the luggage is actually checked.[61] However, Defendant has failed to show that *in pari materia* is an appropriate means to avoid this absurdity.

_____

[59]*E.g.* 18 U.S.C. § 842(j) ("It shall be unlawful for any person to store any explosive material in a manner not in conformity with regulations promulgated by the Attorney General.").

[60]"The Secretary [of Transportation] shall designate material . . . as hazardous when the Secretary determines that transporting the material in commerce . . . may pose an unreasonable risk to the health and safety or property. . . . The Secretary shall prescribe regulations for the safe transportation, including security, of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5103(a)-(b).

[61]Docket No. 66, at 4-5; Docket No. 65, at 11.

There are two key differences between the creation of the DOT and ATF regulations. First, the regulations come from two different rule-making bodies, the DOT and ATF. These agencies have different spheres of responsibility. Second, the ATF created its regulations to govern *possession* of explosives in airports while the DOT created its regulations to govern *transportation* of hazardous materials.

It seems incongruous to apply an ATF definition to a DOT regulation because there is no reason to assume the DOT rule-makers were cognizant of the ATF regulations or that they wanted to create a regulatory system fully in line with the ATF regulations. Further, even if cognizant of the ATF regulations, it is logical that the DOT could have believed that existing ATF regulations on possession of certain items in airports were insufficient to meet the DOT's separate responsibility regulating the safe transportation of the same items. Due to this and the sparse case law on point, the Court finds that the doctrine of *in pari materia* does not apply in the instant case.

D.      FACIAL VAGUENESS

Because the Court has determined that the DOT regulations do not contain a definition of small arms ammunition, it must address whether the lack of this definition makes the regulations unconstitutionally vague. Defendant argues that it would be proper for the Court to rule that the DOT regulations are vague on their face. However, as discussed below, the rule in the Tenth Circuit is that facial vagueness challenges are only proper regarding First Amendment claims.

For a facial vagueness challenge to succeed, a court must find a statute would be vague in all or nearly all of its applications.[62]  If a statute is facially vague, then it is void on its face.[63] Statutory challenges of vagueness are based on due process principles.[64]  The Tenth Circuit has quoted the Supreme Court in stating:

> "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.  Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.  Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."[65]

Thus, vagueness challenges protect the public from unintelligible laws and from arbitrary enforcement.[66]  Regarding public protection, the Tenth Circuit standard is that "'a potential

---

[62]*United States v. Stevens*, 130 S.Ct. 1577, 1587 (2010); *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007).

[63]*United States v. Gaudreau*, 860 F.2d 357, 361 (10th Cir. 1989).

[64]*United States v. Reed*, 114 F.3d 1067, 1069 (10th Cir. 1997).

[65]*Id.* at 1069-70 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

[66]*Gonzales*, 550 U.S. at 148 ("'As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with suficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994))).

defendant must have some notice or fair warning that the conduct contemplated is forbidden by the criminal law.'"[67]

The parties dispute whether the Court may consider a challenge of facial vagueness levied against the DOT hazardous materials regulations.  The government argues that facial vagueness challenges may only be raised if the First Amendment is implicated.  Defendant argues that facial vagueness challenges may be brought if the statute or regulation at issue "threatens to chill constitutionally protected conduct" and that his facial challenge is proper because this case deals with the Second Amendment right to bear arms.[68]  Defendant cites two cases to support his argument: *Lanzetta v. New Jersey*, a gang member classification case,[69] and *Colautti v. Franklin*, an abortion case.[70]  However, neither of these cases provide an accurate statement of the current law regarding when facial vagueness challenges are appropriate.

Rather than analyze *Lanzetta*, a 1939 case addressing the vagueness of a New Jersey law that classified individuals as gangsters based on prior criminal history and current associations,[71] the Court looks to the more recent and somewhat similar case of *Chicago v. Morales*.[72]  In *Morales* the Supreme Court held that a Chicago ordinance targeting gang activity made it a crime

---

[67]*United States v. Michel*, 446 F.3d 1122, 1135 (10th Cir. 2006) (quoting *United States v. Protex Indus., Inc.*, 874 F.2d 740, 743 (10th Cir. 1989)).

[68]Docket No. 62, at 5-6.

[69]306 U.S. 451 (1939).

[70]439 U.S. 379 (1979).

[71]*Id.* at 452.

[72]527 U.S. 41 (1999).

to continue loitering in a group after being ordered by a police officer to disperse.[73]  The decision

offered no clear rule on the application of facial vagueness claims because the members of the

Court disagreed as to how to apply a facial vagueness challenge to the Chicago ordinance.  The

plurality argued for permitting facial vagueness challenges.  The concurring opinions limited the

plurality, but in different ways.  Justice Scalia's dissent challenged the appropriateness of a facial

vagueness challenge.[74]

   The second case Defendant cites is the 1979 case of *Colautti v. Franklin*.[75]  *Colautti* is

one of several abortion cases where the Supreme Court allowed a facial vagueness challenge to a

state law regulating abortions.[76]

   While facial vagueness challenges were allowed in early abortion cases, two recent cases

demonstrate a shift in the law.  It now appears that the Supreme Court disfavors facial vagueness

challenges to abortion statutes.[77]  In *Ayotte v. Planned Parenthood of Northern New England*,[78] a

unanimous Court reversed a First Circuit decision striking down a New Hampshire statute

requiring parental notification prior to performing an abortion on a minor.  The lower courts

found the law unconstitutional because it lacked a provision which would permit abortions

---

[73]*Id.* at 47.

[74]*Id.* at 73-98 (Scalia, J., dissenting).

[75]439 U.S. 379 (1979).

[76]*E.g. Doe v. Bolton*, 410 U.S. 179 (1973); *United States v. Vuitch*, 402 U.S. 62 (1971).

[77]*See Gonzales*, 550 U.S. at 168 ("Respondents have not demonstrated that the Act, as a facial matter, is void for vagueness . . . .").

[78]546 U.S. 320 (2006).

without notification if a woman's life was endangered.[79]  The law was challenged by doctors

seeking a declaratory judgment, so as-applied analysis was not possible.  The Court frowned on

finding a statute unconstitutional on its face because voiding an entire statute is "the most blunt"

remedy available regarding constitutional challenges.[80]  Even though the Court had previously

declared a similar law unconstitutional,[81] it stated that it had not contemplated utilizing a lesser

remedy.[82]  It remanded the case for a determination of whether a mere injunction ordering the

statute to be enforced only in a constitutional manner—by not requiring notification if the

woman's life was in danger—would resolve the issue.[83]

     *Ayotte* stands for the proposition that a Court should prefer judicial remedies that are less

intrusive into the lawmaking roles of state and federal legislators over more extreme remedies.[84]

It also highlights the Court's shift away from allowing facial vagueness challenges in abortion

cases.

     The Supreme Court further demonstrated its disfavor toward facial challenges in abortion

cases in *Gonzales v. Carhart*.[85]  *Carhart* involved a facial challenge against the federal Partial

---

[79]*Id.* at 324-26.

[80]*Id.* at 330.

[81]*Stenberg v. Carhart*, 530 U.S. 914 (2000).

[82]*Ayotte*, 546 U.S. at 330.

[83]*Id.* at 331-32.

[84]*Id.* at 328-29.

[85]550 U.S. 124 (2007).

23

Birth Abortion Ban Act of 2003.  After initially holding that the statute was not

unconstitutionally vague,[86] the Court discussed at length whether a facial vagueness challenge

was appropriate.[87]  While it is not clear whether this section of the Court's opinion is either an

alternative holding or merely dicta, it does offer guidance to lower courts and demonstrates the

trend of disfavoring facial vagueness challenges outside of a First Amendment context.  Justice

Kennedy, writing for the Court, stated:

> The considerations we have discussed support our further determination
> that these facial attacks should not have been entertained in the first instance.  In
> these circumstances the proper means to consider exceptions is by as-applied
> challenge. . . .
> The latitude given facial challenges in the First Amendment context is
> inapplicable here.  Broad challenges of this type impose "a heavy burden" upon
> the parties maintaining the suit. . . .
> As the previous sections of this opinion explain, respondents have not
> demonstrated that the Act would be unconstitutional in a large fraction of relevant
> cases. . . .  It is neither our obligation nor within our traditional institutional role to
> resolve questions of constitutionality with respect to each potential situation that
> might develop.  "[I]t would indeed be undesirable for this Court to consider every
> conceivable situation which might possibly arise in the application of complex
> and comprehensive legislation."  For this reason, "[a]s-applied challenges are the
> basic building blocks of constitutional adjudication."[88]

In sum, while the Supreme Court has not expressly overturned its prior rule permitting

facial vagueness claims outside of a First Amendment context, it is clear that since Justice

Scalia's in-depth discussion of the issue in his *Morales* dissent, the Court has shifted away from

---

[86]*Id.* at 147.

[87]*Id.* at 167-68.

[88]*Id.* (citations omitted) (alterations in original).

allowing such challenges and now favors only permitting facial vagueness challenges when First Amendment protections are involved.[89]

This shift in the law is also evident in the Tenth Circuit case law.  In *United States v. Gaudreau*,[90] the defendants challenged a Colorado commercial bribery statute as vague on its face.  The court stated the rule that "a statute may be challenged on its face when it threatens to chill constitutionally protected conduct, especially conduct protected by the First Amendment."[91] The court found that the statute challenged by defendants did not threaten to chill constitutionally protected conduct.  Thus, the court held that facial analysis was not proper and analyzed the statute as applied.[92]

Nearly a decade later, in *United States v. Reed*, the Tenth Circuit addressed whether the district court had correctly rejected a facial vagueness challenge regarding a statute that forbade drug users from being in possession of a firearm.[93]  The court held:

> Notwithstanding the important values protected by the vagueness doctrine, as the district judge correctly recognized the doctrine's application is limited when

---

[89]*See also United States v. Williams*, 553 U.S. 285 (2008) ("Although ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,' we have relaxed that requirement in the First Amendment context . . . ." (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 & n.6, 7 (1982)).

[90]860 F.2d 357 (10th Cir. 1989).

[91]*Id.* at 360.  The court cited in a footnote the same two cases Defendant cites as examples of constitutionally protected conduct, namely *Colautti v. Franklin*, 439 U.S. 379 (1979) (abortion case) and *Lanzetta v. New Jersey*, 306 U.S. 451 (1939) (gangster by association case).

[92]*Id.* at 361.

[93]114 F.3d 1067, 1069 (10th Cir. 1997).

invoked in a context such as this which does not implicate First Amendment values. *A vagueness challenge in this context cannot be aimed at the statute on its face but must be limited to the application of the statute to the particular conduct charged.*[94]

Thus, in *Reed* the Circuit shifted from allowing facial vagueness challenges *primarily* in First Amendment cases to allowing them *only* in First Amendment cases. The *Reed* rule has recently been reiterated in *United States v. Michel*, where the defendant challenged a sentencing enhancement statute as vague as applied to him. There the court stated: "Where a vagueness challenge does not implicate First Amendment freedoms, our review is limited to the 'application of the statute to the particular conduct charged.'"[95]

These most recent cases from both the Supreme Court and the particularly the Tenth Circuit have been clear: facial vagueness challenges are only proper in the First Amendment context.[96] The cases cited by Defendant do not provide an accurate statement of the current law. Thus, the Court denies Defendant's Motion to Dismiss the Superseding Indictment insofar as it asks this Court to declare the regulation void for facial vagueness.

---

[94]*Id.* at 1070 (emphasis added) (citing *United States v. Powell*, 423 U.S. 87, 92 (1975); *United States v. Mazurie*, 419 U.S. 544, 550 (1975); *United States v. Ocegueda*, 564 F.2d 1362, 1365 (9th Cir. 1977)).

[95]*United States v. Michel*, 446 F.3d 1122, 1135 (10th Cir. 2006) (quoting *Reed*, 114 F.3d at 1070).

[96]There is an argument to be made that the Second Amendment's individual right to bear arms is more akin to the First Amendment individual liberties than to privacy rights and abortion in particular, and therefore, individuals should be able to bring facial vagueness challenges in Second Amendment cases. However, there is currently no case law to support allowing facial vagueness challenges in Second Amendment cases.

E.      AS-APPLIED VAGUENESS

As the charges against Defendant do not implicate the First Amendment, the Court is

limited to considering his vagueness challenge as challenging the regulations as applied in light

of the particular conduct charged.[97]  Such determinations are fact based and are not generally

proper in a pre-trial order.  This Court may only make determinations on pre-trial motions in

criminal matters if it can do so "without a trial of the general issue."[98]  "In a criminal case, the

'general issue' is 'defined as evidence relevant to the question of guilt or innocence.'"[99]  Thus, "if

contested facts surrounding the commission of the offense would be of *any* assistance in

determining the validity of the motion, [FED. R. CRIM. P.] Rule 12 doesn't authorize its

disposition before trial."[100]  In *United States v. Pope*, the Tenth Circuit recently described the

policy supporting this rule:  "Even when the court is ultimately responsible for deciding the

merits of a legal defense, it is sometimes said evidence adduced at trial can provide a 'more

certain framework' for its analysis . . . ."[101]  *Pope* reiterated that district courts are extremely

limited in their power to determine pre-trial motions in criminal matters.

*United States v. Reed* is a Tenth Circuit case on point.  It involved pre-trial dismissal on

grounds of vagueness as applied.  The district court had relied on evidence proffered by the

---

[97]*Michel*, 446 F.3d at 1135.

[98]FED. R. CRIM. P. 12(b)(2).

[99]*United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (quoting *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005)).

[100]*Id.* (emphasis in original)

[101]*Id.* (citing *Reed*, 114 F.3d at 1070).

government and not objected to by the defendant.  The Tenth Circuit reversed and held that the

district court erred in ruling on an as-applied vagueness challenge prior to trial because such a

determination "should be based only on the facts as they emerge at trial."[102]

In applying *Reed* and *Pope* to this matter, it is clear that the Court may not rule on an as-

applied vagueness challenge until after factual determinations are made at trial if such

determinations may be of any use to the Court's decision-making process.  The Court finds that

such a determination of the facts would be useful in this matter.  Consequently, the Court will

defer its ruling on the as-applied vagueness challenge.

F.      THE RULE OF LENITY

Defendant argues for dismissal due to the rule of lenity.  "The rule of lenity is a principle

of statutory construction" that instructs courts to interpret ambiguous criminal statutes in favor of

the defendant.[103]  It applies only in instances where there is a "'grievous ambiguity or uncertainty

in the statute'"[104] and the ambiguity still exists after examining the text and history of the

statute.[105]

------

[102]*Reed*, 114 F.3d at 1070 (quoted in *Pope*, 613 F.3d at 1259).

[103]*United States v. Metzener*, 584 F.3d 928, 934-35 (10th Cir. 2009).

[104]*Barber v. Thomas*, 130 S.Ct. 2499, 2509 (2010) (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)).

[105]*Id.*; *Metzener*, 584 F.3d at 935 (quoting *United States v. Booth*, 551 F.3d 535, 541 (6th Cir. 2009)).

The rule from *Pope*, as described above, applies to all pre-trial motions in criminal matters.  Thus, if any factual determinations would aid the Court in determining whether lenity is proper, the decision should be made post-trial.

The Court finds that factual determinations may be useful in deciding whether the rule of lenity applies in this case.  The Court consequently defers ruling on the issue until after trial.

IV.  CONCLUSION

Based on the discussion above, the Court DENIES the Motion to Dismiss the Superseding Indictment (Docket No. 42) as to Defendant's *in pari materia* and facial vagueness arguments and DEFERS RULING ON the Motion as to Defendant's arguments regarding as-applied vagueness and lenity until after trial.

The Court orders that the parties appear for a status and scheduling conference on December 10, 2010, at 9:00 a.m., at which time a trial date for this matter will be set.  The Court further orders the time from May 24, 2010, until the trial date of this Order shall constitute excludable time under the Speedy Trial Act.[106]

DATED   November 19, 2010.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[106]18 U.S.C. § 3161(h)(1)(D) (delay resulting from a pretrial motion) & (h)(1)(H) (delay under thirty days which matter was under advisement of the Court).

29